IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| Robert Twyman, Jr., | § | |
|    Petitioner, | § | |
| Vs. | § | 2:06-CV-833-MEF |
| Alabama Department of Corrections, et al., | § | |
|    Respondents. | § | |

**MEMORANDUM BRIEF IN SUPPORT OF HABEAS CORPUS PETITION**

    Society has an interest in not having parole revoked because of erroneous information or because of an erroneous evaluation of the need to revoke parole, given the breach of parole conditions. See People ex rel. Menechino v. Warden, 27 NY 2d 376, 379 (1971) (parole board had less than full picture of facts). And society has a further interst in treating the parolee with basis fairness: fair treatment in parole revocations will enhance the chance of rehabilitation by avoiding reactions to arbitrariness.

    If a violation of a condition of parole is involved, rather than the commission of a new offense, there should not be an arrest of the parolee and his return to the prison or to a local jail. Rather, notice of the alleged violation should be given to the parolee and a time set for a hearing.

### FIRST ISSUE

    A warrant must be supported by an oath or affirmation which affords probable cause as required by § 5 of the Constitution of Alabama.

    Because petitioner was arrested and placed back into the ALDOC, before a final decision from the Parole Board, by a Fugitive Warrant issued by the ALDOC "not supported by affidavit," he was not afforded due process.

    "In the absence of an information or affidavit, sworn to by some person having knowledge of the facts, the Fugitive Warrant of June 1998, was an invalid arrest warrant issued without written affidavit. See Thomas v. State, 550 So.2d 1057 (Ala.Crim.App.1989); State v. Thomas, 550 So.2d 1067 (Ala. 1989).

An affidavit which consist solely of the affiant's conclusion that the named individual committed an offense, without setting forth the facts upon which the conclusion is based, is fatally defective.

Even if the ALDOC has jurisdiction of petitioner the ALDOC allowed the Alabama Board of Pardons & Paroles jurisdiction of petitioner for the purpose of parole, which in return allowed the Georgia Board of Pardons & Paroles jurisdiction of petitioner. Apparently, the ALDOC retook petitioner in a manner not prescribed, by neither Alabama or Georgia Parole Board, for neither Board requested the retaken of petitioner.

It is settled law in Alabama that an adminstrative agency is purely a creature of the legislature and has only those powers conferred upon it by the legislatures. See Ethics Commission of the State of Alabama v. Deutcsh, 494 So.3d 606 (Ala. 1986); Ex parte City of Florence, 417 So.2d 191 (Ala. 1982).

A warrant of arrest must be based upon a written affidavit. § 15-7-2 Code of Alabama. Clearly Ex 1:35, was an invalid arrest warrant issued without written affidavit. See Crittender v. State, 476 So.2d 632, 634 (Ala. 1985) ("affidavits...which consist solely of the affiant's conclusion that the named individual committed an offense, without setting forth the facts upon which the conclusion is based, are fatally defective").

"An arrest, in the strict legal sense of the term, involves three elements: Authority, intention and restraint of the person."--2 Am. Eng. Law (2d Ed.) 834.

Ex 1:35, that paper, being without the signature of any magistrate or Judge, was not a warrant. It is a mere nullity, and not admissible as a warrant, as it could not properly be made the basic of any inference as to a fact in issue. It proved merely the writing of a paper which was not a warrant. See Grissom v. Lawler, 10 Ala. App. 540 (1914).

## SECOND ISSUE

Even convicted criminals are entitled to be treated by their government in a fair and straightforward manner. Under those facts petitioner should be allowed to raise a defense against the ALDOC.

a). Petitioner was allowed to transfer his parole to Cobb County Ga., where he resided under the supervision of the State of Ga.. Any warrants, requested for petitioner arrest or revocation

of parole must be forwarded to the Georgia officials, in order for the petitioner to be notified.

    b). Petitioner know the crime inwhich he was arrested was false. Even petitioner's Ga. parole officer stated the night of the arrest, no detainer would be placed against petitioner by the Ga. Parole office. The so-called victim had made a similar complaint before. Never, appearing in Court and petitioner was released. Petitioner had to be released from the Cobb County Adult Detention Center, for he was innoccence.

    c). The Alabama Board of Pardons and Paroles Stated; "The Georgia parole officer subsequently recommended that Twyman be continued on parole supervision. The Alabama Board of Pardons and Paroles accepted this recommendation and voided its declaration of delinquency. Twyman v. Campbell, 2:04-CV-341-F. Therefore, the respondent ignored the Board request to disregard the warrant.

    d). Petitioner had his own Lawn-Care business in Marrietta, Ga.. Cause of the arrest and prolong incarceration the business went broke. However at the time of petitioner arrest in 2004, he was gainful employed. Since, the arrest of 1998 petitioner had not broken any laws.

    The petitioner's so-called judgment and commitment forms layed unexecuted in the hands of the respondents for over five years.

    Petitioner was confined in Cobb County Adult Detention Center, three months after the respondents so-called issued the warrant, but no detainer was lodged with Ga. In addition no such information were made through the National Crime Information Computer; the Alabama Department of Public Safety; or the Alabama Criminal Justice Information Center. See Appendix A.

    At the time of petitioner arrest, in 2004, petitioner was living openly under his own name and was gainfully employed. After been taken into custody petitioner was told that the respondents had been holding the Fugitive Warrant against him for five years. The arrest interrupted his reintegration into the community. See Shelton v. Ciccone, 578 F.2d 1241, 1245 (8th Cir. 1978).

### THIRD ISSUE

Petitioner Sixth Amendment right was violated by the ALDOC imposing an additional 5 years 8 month and 5 days to his original sentence, without a hearing, trial or assistance of attorney.

3.

"In Argersinger v. Hamlin, 407 U.S. 25 (1972), the United States Supreme Court held;

"'[A]bsent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at trial.

See Alabama v. Shelton, 535 U.S. 654, 662 (2002).

The Eighth Amendment declares : "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted." The final clause prohibits not only barbaric punishments, but also sentences that are disproportionate to the crime committed.

Respondents have imposed a sentence of 5 years, 8 months and 5 days without an judicial assistance, which violates State and Federal Laws, a barbaric punishment.

## FOURTH ISSUE

In order for adelay in the execution of a sentence to be repugnant to the Fourteenth Amendment, it is not sufficient to prove official conduct that merely evidences a lack of interest. Rather the waiving state's action must be so affirmatively wrong or its inaction so grossly negligent that it would be unequivocally inconsistent with "fundamental principles of liberty and justice" to require a legal sentence to be served in the aftermath of s.uch action or inaction. See Mobley v. Dugger, 823 F.2d 1495, 1497 (11th Cir. 1987).

The court in United States v. Merritt, 478 F.Supp. 804 (D.D.C. 1979) recognized that in some case fundamental principles of liberty and justice," would be violated if a person were required to serve the remainder of a prison sentence after he had been released prematurely from custody through no fault of his own, and had made a good adjustment to society.

The respondents miscoduct here amounted to "more than negligence." The respondents' conduct was not a mere "lack of eager pursuit or the lack of interest." The conduct here much more like that described by the Piper v. Estelle, 485 F.2d 245 (5th Cir. 1973) court as a contrast to the government's conduct in Piper, "action so affirmatively wrong or inaction so grossly negligent that it would be unequivocally inconsistent with'fundamental principles of liberty and justice' to require a legal sentence to be served in the aftermath of such action or inaction." The return of petitioner to prison was "inconsistent with fundamental principles of liberty and justice."

4.

It is well settled that when a prisoner is released prior to service or expiration of his sentence through no fault or connivance of this own, and the authorities make no attempt over a prolonged period of time to reacquire custody over him, he may be given credit for the time involved, and he will not be required at some later time to serve the remainder of his sentence. White v. Pearlman, 42 F.2d 788 (10th Cir. 1930); Bailey v. Ciccone, 420 F.Supp. 344, 347 (W.D. Mo. 1976); Albori v. United States, 67 F.2d 4 (9th Cir. 1933). Other courts have reached a similar result under what has been called a waiver of jurisdiction theory. Smith v. Swope, 91 F.2d 260 (9th Cir. 1937); Shield v. Beto, 370 F.2d 1003 (5th Cir. 1967); In re Jennings, 118 F. 479 (E.D. Mo. 1902); United States v. Croft, 450 F.2d 1094 (6th Cir. 1971); Lanier v. Williams, 361 F.Supp. 944 (E.D. N.C. 1973).

When petitioner was finally released from the Cobb County Adult Detention Center, September 15, 1998, neither the Georgia nor Alabama authorities made any effort to interfere with that release. It would be wholly unreasonable to ascribe fault to this petitioner because he did not, after release, continue to badger the respondents Responsibility for petitioner's release from the Cobb County Adult Detention Center and his subsequent at-large status rests entirely with the resdpondents authoritite.

Moreover, even if it be considered that the present situation was created by the joint and several wrongful action of the Alabama and Georgia authorities, or by a jurisdictional or bureaucratic conflict between them, it would not change the conclusion. In one way or another, the wrongful actions of the agents of those two governmental bodies were inextricably intertwined, and as it may now no longer be possible to determine who was primarily at fault (except that it is not this petitioner).

Petitioner was released as a result of a caregully-considered decision of the competent Georgia agency that he, and the community, no longer require his incarceration. Such decisions are not always right, but a substantial period of time has elasped, defendant has demonstrated exceptional adjustment and progress and the judgment of the Georgia authorities appears to have been fully vindicated by petitioneer's subsequent conduct. Requiring service of petitioner's sentence now has jeopardized his long-term adjustment to society, disrupt both his life and his family life and destroyed his economic

base.

During the past years since his incarceration in Cobb County, petitioner has been guilty of no wrongdoing but has done his best to become a useful citizen, the law denamds precisely such obedience. The U.S. Court of Appeals for the Fifth Circuit has stated (<u>Piper v. Estelle</u>, 485 F.2d 245, 246 (5th Cir. 1973)), that a sentence, thorgh once entered, need not be served when such service would be inconsistent with fundamental principles of liberty and justice.

In <u>Lanier v. Williams</u>, 361 F.Supp. 944, 947 (E.D. N.C. 1973) stated; "Once the state, through acts or omissions of its officials, has led a person, through no fault of his own, to believe that he is free of a prison sentence, and makes no attempt for a prolonged period of years to reacquire custody over him, that person should be able to rely on the state's action or inaction, and assume that further service of the sentence will not be exacted of him. The state should not later be heard to assert a right to custody over the person whom it has no misled, and to permit the state to do so offends the Due Process Clause of the Constitution. See Petitioner Appendix B attached, **Shield v. Beto**, 370 F.2d 1003 (5th Cir. 1967)

Done this the 11 day of December, 2006.

*Robert Turpnan, jr.*
D.C.F. 147435 C-3-18
P.O. Box 1107
Elmore, Alabama 36025


## CERTIFICATE OF SERVICE

I hereby certify that I have served a true and correct copy of the foregoing on the Attorney General Office for the State of Alabama and the Alabama Department of Corrections Legal Division, by placing the same in the U.S. Mail postage prepaid and properly addressed.

*Robert Turpnan, jr.*

6.

# UNITED STATES COURT OF APPEALS OF THE FIFTH AND ELEVENTH CIRCUITS / 1967 / 370 F.2d 1003::Shields v. Beto::January 10, 1967

370 F.2d 1003::Shields v. Beto::January 10, 1967

> LNI:3S4W-XT50-0039-Y1J8-00000-00
> Jack SHIELDS, Appellant, v. Dr. George J. BETO, Director, Texas Department of Corrections, Appellee
> UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT
> 370 F2d 1003370 F.2d 1003; 1967 US App LEXIS 78331967 U.S. App. LEXIS 7833
> No. 23838
> January 10, 1967

**Disposition**
   Reversed.
**Judges:** Tuttle, Chief Judge, and Ainsworth and Dyer, Circuit Judges.

# UNITED STATES COURT OF APPEALS OF THE FIFTH AND ELEVENTH CIRCUITS / 1967 / 370 F.2d 1003::Shields v. Beto::January 10, 1967 / Opinion

Opinion

**Opinion by:**            AINSWORTH

{370 F.2d 1003} AINSWORTH, Circuit Judge:

> This is an appeal by Jack Shields from denial of habeas corpus. Appellant was convicted in Gray County, Texas, for two felonies, on May 18 and 19, 1933, respectively, and sentenced to 10 years' imprisonment in each case to run consecutively. On November 28, 1933, he was convicted in Wheeler County, Texas, for a felony and sentenced to an additional term of 20 years to run consecutively to the first two convictions, a total of 40 years. On December 5, 1934, after serving slightly more than 1 year of his 40-year term, the {370 F.2d 1004} Governor of Texas granted Shields a 60-day "furlough." Texas prison officials notified Louisiana authorities of the "furlough" because Shields had escaped from a Louisiana penitentiary prior to the Texas convictions. Instead of taking the furlough, Shields signed a waiver of extradition and began serving time in the Louisiana penitentiary, from which he was paroled on June 2, 1944. Parole supervision was removed on April 7, 1948. Texas did not place a detainer for Shields at the Louisiana penitentiary, and he was released and remained at large until May 12, 1960, when he was convicted in a federal district court in Tennessee and sentenced to 5 years, from which he was paroled on May 12, 1962. He was then transferred to Jasper County, Texas, where, 28 years after he was first extradited by Texas to Louisiana, he was convicted of passing a forged instrument and sentenced to a term of 2 years plus the time not served as of December 5, 1934 on the 1933 convictions in Texas, an additional period of approximately 39 years.1

> Following the latest Texas conviction Shields applied for a writ of habeas corpus to the Texas Court of Criminal Appeals because of his continued incarceration under the three 1933 Texas convictions. Ex parte Shields, Tex.Cr.App., 1963, 371 S.W.2d 395. Certiorari was denied by the United States Supreme Court, Shields v. Texas, 379 U.S. 860, 85 S. Ct. 119, 13 L. Ed. 2d 63 (1964).

© 2006 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Appendix B

In the present petition for habeas corpus Shields alleges that he is entitled to his release and his continued incarceration under the 1933 Texas convictions is in violation of his rights under the due process clause of the Fourteenth Amendment of the United States Constitution.

The question we must decide is whether after more than 28 years of inaction on the part of the State of Texas relative to the unexpired term of Shields's 1933 convictions, he may now on conviction of a new felony in Texas be required to serve the balance of time on these old sentences. Do the circumstances of this case, therefore, offend the constitutional precepts of due process stated in the Fourteenth Amendment?

The due process clause of the Fourteenth Amendment requires that action by a state through any of its agencies must be consistent with the fundamental principles of liberty and justice. Buchalter v. People of the State of New York, 319 U.S. 427, 63 S. Ct. 1129, 87 L. Ed. 1492 (1943). It exacts from the states a conception of fundamental justice. Foster v. People of State of Illinois, 332 U.S. 134, 67 S. Ct. 1716, 91 L. Ed. 1955 (1947).

As far back as 1902, in the case of In re Jennings, 118 F. 479, a federal circuit court in Missouri recognized that delay in execution of a sentence is repugnant to the law.

In Ex parte Bugg, 1912, 163 Mo.App. 44, 145 S.W. 831, the defendant was convicted in two cases involving illegal sale of liquor, and after having served a short time in prison under the first sentence, the court suspended that sentence because of defendant's failing health, and he was released from custody. Nothing was done at the time about the sentence imposed in the second case. Approximately 3 years later he was arrested and imprisoned on the sentence imposed in the second case. The court ordered his release, although recognizing the general rule that absent a statutory provision a jail sentence can be satisfied only by compliance with its terms, and held that delay in imprisonment occasioned by the sentencing court itself could bar enforcement of a criminal judgment. The court said:

> "We do not mean to be understood as holding that the lapse of three years or {370 F.2d 1005} any specific time should be sufficient or be required in all cases to bar the enforcement of a judgment similar to this one, but each case should rest upon its own peculiar facts and such course followed as will best promote the ends of justice." (145 S.W. at 833.)

In Thompson v. Bannan, 6 Cir., 1962, 298 F.2d 611, petitioner was surrendered to Illinois authorities by Michigan authorities and upon acquittal in Illinois was extradited and convicted in Michigan. The Sixth Circuit affirmed the district court's denial of habeas corpus because at the time petitioner was surrendered to Illinois the charge in Michigan was still pending and consequently there could have been no implied pardon or commutation of a sentence which had not yet been imposed. However, the court distinguished the case from "those cases where the prisoner was surrendered to a sister state while serving a sentence after conviction." The court said that "A release by the governor under such circumstances is sometimes considered to be in effect a pardon of the remainder of the sentence. Ex parte Guy, 41 Okl.Cr. 1, 269 P. 782. In In re Jones, 154 Kan. 589, 121 P.2d 219, under similar facts it was held to be a commutation of sentence." The Sixth Circuit also said in its opinion:

> "The surrender to another state while the prisoner is serving a sentence is equivalent to a pardon. We think implied pardon or commutation of sentence is more descriptive of the legal effect of such a surrender than waiver of jurisdiction. In such a case the judgment of conviction is

© 2006 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

satisfied and there is no continuing jurisdiction. There is ample justification for such final release as stated by the court in the Rayborn [Jones v. Rayborn, Kentucky, 1962, 346 S.W.2d 743] case." (Emphasis supplied.)

In Jones v. Rayborn, 346 S.W.2d 743, 747, the court disagreed with the state's theory that "the right to pardon or commute sentence is given to the Governor alone and not to lesser officials," a contention made by Texas in the present case. The court said (346 S.W.2d at 747):

"Therefore, it appears unreasonable to limit the application of these standards to the Governor alone. He is not the State. He is the Chief Executive, but the State may act in many capacities through lesser officials and in turn the acts of many officials other than the Governor may bind the State. And if the Governor may waive a right of the State when he is not attempting to exercise his right to pardon and is acting in another field, we see no reason why other officials of the State should not also bind the State by their official acts."

*Rayborn* differs from the present case in that the prisoner was extradited *against his will* from a state to a federal penitentiary before expiration of his state term and restrained after he had served sufficient time for eligibility for parole under state law. The Kentucky appellate court ordered the prisoner's release, affirming a lower court holding that Kentucky had waived jurisdiction by turning Rayborn over to federal custody before expiration of his state sentence.

In People ex rel. Barrett v. Bartley, 383 Ill. 437, 50 N.E.2d 517, 147 A.L.R. 935 (1943), the court held that where a prisoner was transferred to Wisconsin while imprisoned in Illinois, he could not be required to return to Illinois to serve the balance of the sentence owed to that state and the action of the Governor of Illinois in extraditing him to Wisconsin operated to waive any further jurisdiction over the prisoner.2

Thus we hold that the extraditing of Shields to Louisiana authorities and the release by Texas of the prisoner before expiration of his sentence constituted a waiver of jurisdiction over Shields, especially where the surrendering {370 F.2d 1006} sovereign (Texas) showed no interest in the return of the prisoner, either by agreement between the sovereigns, by detainer, or any other affirmative action taken by it following his release in Louisiana. A prisoner cannot be required to serve his sentence in installments. White v. Pearlman, 10 Cir., 1930, 42 F.2d 788.

The lack of interest in Shields by the State of Texas from the date he was released to the Louisiana authorities in 1934 until 1962 when again convicted in Texas, a lapse of more than 28 years, was equivalent to a pardon or commutation of his sentence and a waiver of jurisdiction. The Jasper County state judge, therefore, lacked authority to require Shields to complete service of the sentences under the old 1933 convictions, which action constituted a denial of due process under the Fourteenth Amendment to the United States Constitution.

Reversed.

## UNITED STATES COURT OF APPEALS OF THE FIFTH AND ELEVENTH CIRCUITS / 1967 / 370 F.2d 1003::Shields v. Beto::January 10, 1967 / Footnotes

© 2006 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Footnotes

Footnotes

<u>1</u>   The federal district judge in his reasons for judgment stated: "Petitioner was committed to the Texas Department of Corrections to serve a two year sentence from the Jasper County conviction and to serve all the time on his Gray and Wheeler Counties convictions not served as of December 5, 1934, the date of his 'furlough' when he was sent to Louisiana."

<u>2</u>   Compare Jones v. Morrow, 154 Kan. 589, 121 P.2d 219 (1942); State ex rel. Shotkin v. Buchanan, Fla.App., 1963, 149 So.2d 574, 98 A.L.R.2d 683; Smith v. Swope, 9 Cir., 1937, 91 F.2d 260.

© 2006 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.