IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

2008 MAR 20  A 9 33

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

Robert Twyman, Jr.,                         )

      Petitioner                          )

vs.                                         )         Civil Actions No. 2:06cv-833 MEF

Alabama Department of                       )
Corrections, *et al.*,

      Respondents.                        )

## PETITIONER' S SECOND REQUEST FOR EXPANSION OF THE RECORDS

Comes Now, Petitioner in the above styled cause, pursuant to Rule 7, Rules Governing Section 2254, moves this Court for an second expansion of the records, and the authentication of certain procedures, by showing good cause in the following, to-wit:

### FACTS

1. On 10/22/07, petitioner first motion to expand the records was filed. 10/ 23/07, the motion was granted.

2. On/or about 10/30/07, petitioner requested documents concerning (4) relevant issues from the respondents, pertaining to this cause.

3. Respondents failed to serve petitioner with a copy of their response. However, 1/14/08 this court provided petitioner with a copy of *Respondent's Response to Request for Documents.*

4. *Respondents Response to Request for Documents,* revealed that on 2/20/04, (*7 day after petitioner had been arrested as a parole violator according to respondents*) someone entered into the Interstate Compact computer, an Authorization to Issue Warrants for paroled Prisoner, from the ABPP, dated 6/5/98.

5. Petitioner first brought this "Lack of Interest" issue to this Courts attention in the *Memorandum Brief in Support of Habeas Corpus Petition,* on/or about 12/1106. This issue had been litigated earlier in *Petitioner's Amendment to Supplemental Response,* on/or about 1/29/08.

1

6. Petitioner has s.ated, respondents' procedures, for the retaking of parolees and re-calculation of time of confinement, violates the United States Constitution.

7. Petitioner's submitting to this Court and ALDOC (*petitioner can not afford to furnish the Attorney General Office a copy, postage or coping fees*) **The Supervision of Parolees and Probationers revised, 1998.** This agreement provides the sole statutory authority for regula⁺iᴏn the transfer of adult parole and probation supervision across state lines. All fifty (50) stat⎽s, the District of Columbia, Puerto Rico and Virgin Islands are signatory to the compact.

8. Petitioner's parole was transferred from the State of Alabama, to the State of Georgia by-way of Interstate Compact. Respondents needs to product for this court and a copy to petitioner, the written agreement, signed by all parties acknowledging the approval of the contract. An "Waiver of Jurisdiction" has been litigated previously, and evidence of this issue exists. The expansion of records may assist petitioner in that area.

9. Apparently, the Interstate Compact was a contract between the State of Alabama Board of Pardons & Paroles and the State of Georgia Board of Pardons & Paroles, to allow peι⏑ioner to live in Cobb County, Ga.. "Compacts are also viewed as contracts between s ate⎽ and the substantive law of contracts are applicable to them." See *Zimmernam v. Harʋing*, 227 US 489 (1913).

10. Petitioner recuests this Court to view the Interstate Compact handbook, entirely. Respondents should take special notice of the handbook, as to whether those guidelines, have been violated.

11. Respondents should note: The United States Supreme Court ruled that compacts, which increase a state's power in relation to the federal government's power in areas of overriding federal interest, are prohibited by Article I, Section 10, Clause 3 of the United States Constitution. See *U.S. Steel Corp. v. Multistate Tax Comm'n.*, 434 U.S. 452 (1979); and *Virginia v. Tennesse*, 148 US 503 (1893).

12. In Respᴄn.lents response of 11/8/06, they relied upon Ala. Code §15-22-31(a) as their authority fo  the Commissioner of ALDOC to issue a warrant to retake a prisoner. Petitioner has stated this procedure violates the United States Constitution; for no statute can purport to authorize the issuance of any warrant based upon less than that required by the Fourth Amendment. See *Nathanson v. United States*, 290 US 41, 47 (1933).

13. On 12/14/06, respondent Holt affidavit stated; "it is the responsibility of the Alabama Departme n of Corrections and not the Alabama Pardon and Parole Board to issue warrants for tl e retaking and return of prisoners." The affidavit violated Rule 56(e) of the Fed.R.Civ.P., for she has no personal knowledge of the events, furthermore if what she stated is true, petitioner rights were violated. Also see, *Reeves v. Thigpen*, 879 F.Supp. 115 (M.D. Ala. 1995).

14. The Code of Alabama Title 15, Chapter 22 Pardons, Paroles and Probation has §15-22-1 Compact with other states, and §15-22-31 Warrant for retaking parole. Title 14, Chapter 1 Board and Department of Corrections. Section 14-2-8 & 9 Power, shows no authorization to issue warrants. However, §15-22-31 the ABPP section of the Code, apparently provides a provision for the ALDOC to issue a warrant.

15. Petitioner request this Court to expand the records, in order to show how the Interstate Compact *a c ntract*) between ABPP and GBPP concerning the supervision of petitioner, has been employed in a manner contrary to the natural and legal rules for its usual by respondent. (*Hc w's the ALDOC apart of this contract*)? There's evidence of violations in the records, of the Interstate Compact handbook for the Supervision of Parolees and Probationers. The misuse of the Interstate Compact violates Federal Law.

## CONCLUSION

WHEREFORE, the premises considered, Petitioner prays this court will allow a second expand of records.

Done this the 19 day of March 2008.

/s/ *Robert Twyman jr*

## CERTIFICATION OF SERVICE

I hereby cer fy that I have this 19 day of March, 2008 served a true and correct copy of this request for expansion of the records, an attached copy of Interstate Compact on the ALDOC, Legal Division. No copy of the Interstate Compact was served on the Attorney General Office for the State of Alabama. Being placing the same in the U.S. Mail postage prepaid and properly addressed.

/s/ *Robert Twyman jr*
147435  C2-14A
P.O. Box 8
Elmore, Alabama 36025

Alabama Department of Corrections
Legal Division
P.O. Box 301501
Montgomery, Alabama
                36130-0501

Attorney General Office
State of Alabama
11 South Union Street
Montgomery, Alabama
                36130-0152

Robert Twyman, Jr
147435 C2-14A
ELMORE CORR. FACILITY
P.O. BOX 8
ELMORE, AL 36025





Office of the Clerk
U.S. District Court
Middle District of Alabama
P.O. Box 711
Montgomery, Alabama
              36101

# THE
# INTERSTATE
# COMPACT
# HANDBOOK
## *for*
## *The Supervision of*
## *Parolees and Probationers*

**Revised, 1998**

Published by
Parole and Probation Compact
Administrators' Association

1

# TABLE OF CONTENTS

I.    **Introduction** ................................................................ **2**

II.   **Nature of the Compact** ................................................ **2**

III.  **Eligibility for Supervision** .......................................... **3**
      A.   Criteria ................................................................. 3
      B.   Types of Supervision ......................................... 4
      C.   Conditions of Supervision and Special Conditions ........... 4

IV.  **Standards and Procedures** .......................................... **4**
      A.   Opportunity to Investigate ................................. 5
      B.   Supervision Issues ............................................. 5
      C.   Violations ........................................................... 6

V.   **Retaking Cases from Another Jurisdiction** ................ **7**
      A.   Arrest, Warrants and Bail ................................. 7
      B.   Return Under the Compact ................................. 7

**Appendix** ................................................................................. **9**

**Legal Citations** .................................................................... **14**

Revised 1998

2

## I.    INTRODUCTION

In 1946, Compact Administrators formed the Interstate Parole and Probation Compact Administrators' Association in order to resolve problems associated with the administration of the Compact. The Association meets annually to discuss questions of policy and interpretations and to develop necessary administrative regulations.

This handbook, produced by the Parole and Probation Compact Administrators' Association, will aid in disseminating information regarding the Interstate Compact for the Supervision of Parolees and Probationers. It is for use by members of the criminal justice system, legislators, educators, and other interested parties. It is a resource for reference to the general rules and operations of the Compact. This handbook is not a substitute for the compact manual published by the Parole and Probation Compact Administrators' Association.

It is important for all persons working in the criminal justice system to realize the legal ramifications and procedural guidelines of the daily operations of the Compact. A thorough understanding and proper use of the Compact is a highly effective tool in promoting public safety through the control of the interstate movement of offenders. To purchase the complete manual on the Interstate Compact for the Supervision of Parolees and Probationers contact the Interstate Compact Office in your state.

## II.    NATURE OF THE COMPACT

The Interstate Compact for the Supervision of Parolees and Probationers allows the cooperation between states in their efforts to control crime and rehabilitate criminals. The Compact (Appendix A) recognizes the legitimate needs of offenders meeting eligibility criteria, to transfer supervision to another state to improve their chances for successful rehabilitation. The Compact strives to ensure public safety by recognizing the need of the sending and receiving states to continue their control and supervision over these offenders. The Interstate Compact for the Supervision of Parolees and Probationers arose following the enactment by Congress of the Crime Control Act of 1934.[i] This permitted two or more states to enter into agreements or compacts for cooperative efforts and mutual assistance in the prevention of crime.

The Interstate Compact for the Supervision of Parolees and Probationers was the first Compact enacted by all fifty (50) states, the District of Columbia, the Virgin Islands, and Puerto Rico. Appendix B contains a listing of the statutory citations to the Compact. Prior to the enactment of the Compact, offenders could not leave the state of conviction or could leave under gentlemen's agreements or under sundown parole or probation, i.e., release conditioned upon leaving the jurisdiction, never to return and without thought given to supervision. None of these arrangements were satisfactory and defeated the purpose of parole and probation supervision.[ii] The primary purpose of the Interstate Compact was to discourage this practice.

3

The United States Supreme Court has ruled a compact, approved by Congress, has the supremacy granted federal law.[iii] Compacts are also viewed as contracts between states and the substantive law of contracts are applicable to them.[iv]

The Supreme Court ruled that only compacts, which increase a state's power in relation to the federal government's power in areas of overriding federal interest, are prohibited by Article I, Section 10, Clause 3 of the United States Constitution.[v] Furthermore, Congress, in the Crime Control Act of 1934, has at least implicitly approved the Interstate Compact for the Supervision of Parolees and Probationers.[vi]

## III.    ELIGIBILITY FOR SUPERVISION

### A.    Criteria

Any state (sending state) who is a party to the Compact may permit any probationer or parolee to reside in any other state (receiving state) party to this Compact, while on probation or parole, if:

1.  Such person is in fact a resident of or has family residing within the receiving state and can obtain employment there. The offender shall have an offer of employment or a visible means of support;

2.  Though not a resident of the receiving state and not having family residing there, the receiving state consents to such person being sent.

Before granting such permission, the receiving state shall have the opportunity to investigate the residence and the prospective employment of such person.

Listed below is the definition of a resident of the receiving state.

One who has been an actual inhabitant of such state continuously for more than one (1) year prior to coming to the sending state and has not resided within the sending state more than six (6) continuous months immediately preceding the commission of the offense for which the conviction occurred.[vii]

The Association has not adopted a rigid interpretation of the Compact's language regarding residence, family, and employment. The Association's view regarding acceptance of cases for supervision applies when individuals have legal residence or relatives in the receiving state. An individual's plan is also acceptable if it has merit and will serve to promote public safety and assist in the ultimate rehabilitation and control of the offender.

4

**B. Types of Supervision**

**Concurrent Supervision** - An offender sent to another state for supervision under the Compact shall be processed and supervised as any other compact case.

**Misdemeanants** - Misdemeanants are eligible for supervision under the Compact.

**Non-Convicted Offenders** - Non-convicted persons who are subject to supervision under order of the court are not ordinarily subject to supervision under the Compact. However, where reciprocal legislation or other law exists allowing such transfer and supervision, states may supervise these cases in accordance with the other authorizing law.

**C. Conditions of Supervision and Special Conditions**

Offenders will comply with the conditions of supervision imposed by both the sending and receiving states. The receiving state may impose its own special conditions and shall notify the sending state of such conditions as soon as possible. If the receiving state chooses not to, or is unable to enforce a condition of supervision imposed by the sending state, the receiving state shall notify the sending state immediately.

**IV.    STANDARDS AND PROCEDURES**

Interstate Compact standards provide for the governor of each state to appoint a Compact Administrator who is responsible for administration of the Compact. Rules recently enacted by the Parole and Probation Compact Administrators' Association limit each state to one (1) Compact Administrator and no more than two (2) Deputy Compact Administrators.

Although parole is usually administered by a single state agency, many states do not have centralized probation systems. Probation supervision is often administered at the county level. It is the responsibility of the state's Interstate Compact Office to coordinate those county offices and provide compact services. The Compact Administrator must provide supervision for interstate offenders if the county refuses.

All communication involving compact matters shall be mandated and channeled through the Administrator's office or the office of a designated Deputy Compact Administrator. These regulations reflect the necessity of the existence of a central authority responsible for the administration of the Interstate Compact. Interstate offices must ensure the accuracy of record keeping and be accountable for following uniform compact policies and procedures. The flowchart (Appendix C) illustrates the transfer procedure that allows an offender to transfer under the Compact.

## A.    Opportunity to Investigate

When initiating a request for transfer through the Compact, the responsibilities listed below are acknowledged:

1. The receiving state shall have the opportunity to investigate the prospective plan of the offender prior to movement to the receiving state.

2. Cases with less than forty-five (45) days of supervision shall not be transferred.

3. In pre-parole cases, the receiving state shall not commence investigation of employment and residence more than ninety (90) days in advance of the proposed placement.

4. If the offender has not proceeded to the receiving state within one hundred twenty (120) days after acceptance, the receiving state may withdraw its acceptance and close interest with notification to the sending state. The sending state may ask for a reinvestigation of the proposed plan but shall await another acceptance before sending the offender to the receiving state.

5. Upon receipt of the transfer request, the receiving state has forty-five (45) calendar days to complete the investigation. If the investigation report is needed by a specific date, the sending state shall advise the receiving state.

6. If the receiving state rejects supervision, it is the responsibility of the sending state to arrange for the removal of the offender from the receiving state.

## B.    Supervision Issues

Once accepted by the receiving state, the following supervision guidelines are observed:

1. Each receiving state shall assume the duties of visitation and supervision over offenders transferred under the Compact, by the same standards which prevail for its own offenders.[viii]

2. The sending state determines the duration of supervision and the receiving state determines the degree of supervision.

3. The receiving state shall provide the sending state with annual progress reports unless discontinued by mutual consent. The receiving state shall provide arrival reports to the sending state within thirty (30) days after the offender's arrival.

4. No sending state shall impose a supervision fee on an offender who is currently being supervised by another state. All money the sending state

desires to collect from offenders is to be sent directly to the sending state by the offender.

5. The receiving state has the discretionary authority to issue an offender a temporary travel permit to make visits out of the receiving state for a period not to exceed thirty (30) days.

6. The receiving state shall close its records and cease supervision of an offender when there is a certificate of discharge from supervision or upon permission to close interest from the sending state. Closure can also occur when an offender absconds, is in an institution, imprisoned, or upon death.

## C.    Violations

When there appears to be good and sufficient reason to believe a violation has occurred, the receiving state may ask the sending state to retake the offender.

1. The receiving state shall promptly, upon violation, notify the sending state of such violation. The receiving state shall send information to the sending state detailing the nature of the crime and the length of the new sentence, as well as any technical violations. The sending state shall reply to any violation report with either a decision or status report within thirty (30) days of its receipt.

2. The sending or receiving state can place a warrant, detainer or compact warrant against an offender.

3. There is no bail allowed on an offender arrested in the receiving state, while the sending state is in the process of returning the offender.

4. The receiving state shall conduct a preliminary hearing on a violation when requested to do so by the sending state. No preliminary hearing is necessary when an offender has waived the hearing and admitted the violation. If the sending state does not honor waivers, a preliminary hearing is necessary.

5. The sending state recognizes the duty to retake a violator if the receiving state insists. Nevertheless, the receiving state should give due consideration to residence and family ties prior to requesting the return of supervision. The receiving state should be willing to explore alternatives requested by the sending state.

## V.    RETAKING CASES FROM ANOTHER JURISDICTION

### A.    Arrest, Warrants and Bail

Interpreters of the Compact have concluded an offender under Compact supervision may be:

- Arrested upon order of the receiving state's Compact Administrator and held until receipt of the sending state's revocation warrant.[ix]

- Arrested and held a "reasonable time" pending arrival of an expected arrest warrant from the sending state.[x]

- Denied bail while the sending state is in the process of returning an offender to its jurisdiction, particularly if an offender of the receiving state may be denied bail under similar circumstances. The receiving state is bound by the sending state's warrant.[xi]

## B.    Return Under the Compact

The Compact provides that duly accredited officers of a sending state may at all times enter a receiving state, apprehend and retake any offender. For that purpose, no extradition formalities are required other than establishing the authority of the officer and the identity of the offender. All legal requirements to obtain extradition of fugitives from justice is waived. The decision of the sending state to retake an offender is conclusive and not reviewable within the receiving state.[xii] When a state seeks to retake an offender, there should be no pending charges against the offender and the offender should not be a suspect in a criminal investigation. The offender shall not be retaken without the consent of the receiving state, until discharged from prosecution or from imprisonment for such offense.[xiii]

Parole and probation agencies have not experienced difficulties in returning violators apprehended in the receiving state. This is particularly true when the offender has signed the Application for Compact Services and Agreement to Return form.[xiv] This form provides an advance waiver of extradition on the part of the offender in return for being permitted to travel to another state. This waiver is necessary should the offender abscond from supervision or otherwise violate the terms of supervision. The form also eliminates any problems that might arise due to varying practices and rules from state to state. The offender's signature provides evidence that these differences are recognized when requesting compact supervision.

The right of states to retake compact cases without extradition has been challenged in court many times, but no court of last resort has ever handed down a decision unfavorable to the compact.[xv] An offender who has been released to supervision under the Compact in another state and absconds to a third state may also be returned without the formality of extradition proceedings.[xvi] There are several court decisions upholding the return of an alleged violator under a pre-signed waiver. The courts have ruled:

- Prior waiver of extradition as a condition of supervision is not an unreasonable or coerced condition;
- Prior waiver is enforceable if the offender had "general knowledge and understanding" of the waiver;

- Extradition is not an exclusive remedy;[xvii]
- There is need only to establish identity of the offender and the authority of the retaking officer.[xviii]

The Parole and Probation Compact Administrators' Association will strive to facilitate a smooth transition of supervision for the rehabilitation of offenders. The Association will monitor the offender's adjustment for the protection of the communities in which we live.

9

# APPENDIX

A) The Uniform Enabling Act (The Compact)

B) Statutory Citations

C) Interstate Compact Parole/Probation Transfer Process Flow Chart

*The Uniform Enabling Act*

(Contains the exact wording of the Interstate Compact for the Supervision of Parolees and Probationers.)

An Act Providing That the State of { }May enter into a Compact with Any of the United States for Mutual Helpfulness in Relation to Persons Convicted of Crime or Offenses Who May Be on Probation or Parole.

Be it enacted, etc.:

Section 1. The Governor of this state is hereby authorized and directed to execute a compact on behalf of the state of { } with any of the United States legally joining therein in the form substantially as follows:

*A Compact*

Entered into by and among the contracting states, signatories hereto, with the consent of the Congress of the United States of America, granted by an act entitled "An act granting the consent of Congress to any two or more states to enter agreements or compacts for cooperative effort and mutual assistance in the prevention of crime and for other purposes."

The contracting states solemnly agree:

(1)     That it shall be competent for the duly constituted judicial and administrative authorities of a state party to this compact (hereto called "sending state"), to permit any person convicted of an offense within such state and placed on probation or released on parole to reside in any other state party to this compact (hereto called "receiving state"), while on probation or parole, if

    (a)     Such person is in fact a resident of or has his family residing within the receiving state and can obtain employment there;

    (b)     Though not a resident of the receiving state and not having his family residing there, the receiving state consents to such person being sent there.

Before granting such permission, opportunity shall be granted to the receiving state to investigate the home and prospective employment of such person.

A resident of the receiving state, within the meaning of this section, is one who has been an actual inhabitant of such state continuously for more than one year prior to his coming to the sending state and has not resided within the sending state more than six continuous months immediately preceding the commission of the offense for which he has been convicted.

(2)     That each receiving state will assume the duties of visitation of and supervision over probationers or paroles of any sending state and in the exercise of those duties will be governed by the same standards that prevail for its own probationers and parolees.

(3)     That duly accredited officers of a sending state may at all times enter a receiving state and there apprehend and retake any person on probation or parole. For that purpose no formalities will be required other than establishing the authority of the officer and the identity of the persons to be retaken. All legal requirements to extradition of fugitives from justice are hereby expressly waived on the part of states party hereto, as to such persons. The decision of the sending state to retake a person on probation or parole shall be conclusive upon and not reviewable within the receiving state, provided, however, that if at the time when a state seeks to retake a probationer or parolee there should be pending against him within the receiving state any criminal charge, or he should be suspected of having committed within such state a

criminal offense, he shall not be retaken without the consent of the receiving state until discharged from prosecution or from imprisonment for such offense.

(4) That the duly accredited officers of the sending state will be permitted to transport prisoners being retaken through any and all states parties to this compact, without interference.

(5) That the governor of each state may designate an officer who, acting jointly with like officers of other contracting states, if and when appointed, shall promulgate such rules and regulations as may be deemed necessary to more effectively carry out the terms of this compact.

(6) That this compact shall become operative immediately upon its execution by any state as between it and any other state or states so executing. When executed it shall have the full force and effect of law within such state, the form of execution to be in accordance with the laws of the executing state.

(7) That this compact shall continue to force and remain binding upon each executing state until renounced by it. The duties and obligations hereunder of a renouncing state shall continue as to parolees or probationers residing therein at the time of withdrawal until retaken or finally discharged by the sending state. Renunciation of this compact shall be by the same authority which executed it, by sending six months' notice in writing of its intention to withdraw from the compact to the other state party hereto.

Section 2. If any section, sentence, subdivision or clause of this act is for any reason held invalid or to be unconstitutional, such decision shall not affect the validity of the remaining portions of this act.

Section 3. Whereas an emergency exists for the immediate taking effect of this act, the same shall become effective immediately upon its passage.

12
Appendix A

These are the citations for all 50 states, District of Columbia, Puerto Rico, the Virgin Islands and the Federal government.  They are as follows:

| | |
|---|---|
| **Alabama** | Ala. Code Sec. 15-22-1 (1975) |
| **Alaska** | Alaska Stat. Sec. 33.10.010 to 33.10.020 (1982) |
| **Arizona** | Ariz. Rev. Stat. Ann. Sec. 31-461 to 31-466 (1973) |
| **Arkansas** | Ark. Stat. Ann. Sec. 16-93-901 to 16-93-903 (1987) |
| **California** | Cal. Penal Code Sec. 11175 to 11179 (West 1982) |
| **Colorado** | Colo. Rev. Stat. Sec. 24-60-301 to 24-60-309 (1973) |
| **Connecticut** | Conn. Gen. Stat. Ann. Sec. 54-132 to 54-138 (West 1958) |
| **Delaware** | Del. Code. Ann. Tit. 11 Sec. 4358 to 4359 (1974) |
| **District of Columbia** | D.C. Code Ann. Sec. 24-251 to 24-253 (1981) |
| **Florida** | Fla. Stat. Ann. Sec. 949.07 to 949.09 (1984) |
| **Georgia** | Ga. Code Ann. Sec. 42-9-70 to 42-9-71 |
| **Hawaii** | Hawaii Rev. Stat. Sec. 353.81 to 353.82 (1968) |
| **Idaho** | Idaho Code Sec. 20-301 to 20-302 (1979) |
| **Illinois** | 730 ILCS 5/3-3-11 to 5/3-3-11.4 |
| **Indiana** | Ind. Code. Ann. Sec. 11-13-4-1 to 11-13-4-2 (Burns 1981) |
| **Iowa** | Iowa Code Chap. 907A (Supp. 1985) |
| **Kansas** | Kan. Stat. Ann. Sec. 22-4101 to 22-4103 (amended July 1993) |
| **Kentucky** | Ky. Rev. Stat. Ann. Sec. 439.560 (Baldwin 1985) |
| **Louisiana** | La. Rev. Stat. Ann. Sec. 15:574.14 (West 1981) |
| **Maine** | Me. Rev. Stat. Ann. Tit. 34 Sec. 1721 to 1727,1761 to 1763 (1964) |
| **Maryland** | Md. Ann. Code Art. 41 Sec. 129 to 131 (1982) |
| **Massachusetts** | Mass. Ann. Laws Ch. 127 Sec. 151A to 151G (Law. Co-op. 1981) |
| **Michigan** | Mich. Comp. Laws Ann. Sec. 798.101 to 798.103 (West 1982) |
| **Minnesota** | Minn. Stat. Ann. Sec. 243.16 (West 1972) |
| **Mississippi** | Miss. Code Ann. Sec. 47-7-71 (1972) |
| **Missouri** | Mo. Ann. Stat. Sec. 217.810 (Rev. Stat.) |
| **Montana** | Mont. Code Ann. Sec. 46-23-1101 to 46-23-1106 (1985) |
| **Nebraska** | Neb. Rev. Stat. Sec. 29-2637 to 29-2638 (1979) |
| **Nevada** | Nev. Rev. Stat. Sec. 213.180 to 213.210 (1985) |
| **New Hampshire** | N.H. Rev. Stat. Ann. Sec. 607:52 to 607:53 (1955) |
| **New Jersey** | N.J. Stat. Ann. Sec. 2A: 168-14 to 2A: 168-17 (1985) |
| **New Mexico** | N.M. Stat. Ann. Sec. 31-5-1 to 31-5-2 (1978) |
| **New York** | N.Y. Executive Law Sec. 259M (McKinney 1982) |
| **North Carolina** | N.C. Gen. Stat. Sec. 148-65.1 to 148-65.2 (1983) |
| **North Dakota** | N.D. Cent. Code. Sec. 12-56-01 to 12-56-02 (1985) |
| **Ohio** | Ohio Rev. Code. Ann. Sec. 5149.17 to 5149.18 (1981) |
| **Oklahoma** | Okla. Stat. Ann. Tit. 57, Sec. 347 to 349 (West 1969) |
| **Oregon** | Or. Rev. Stat. Sec. 144.610 to 144.620 (1985) |
| **Pennsylvania** | Pa. Stat. Ann. Tit. 61, Sec. 321 to 322 (Purdon 1964) |
| **Puerto Rico** | P.R. Laws. Ann. Tit. 4, Sec. 637 to 639 (1978) |
| **Rhode Island** | R.I. Gen. Laws Sec. 13-9-1 to 13-9-5 (1981) |
| **South Carolina** | S.C. Code. Ann. Sec. 24-21-810 to 24-21-830 (1976) |
| **South Dakota** | S.D. Codified Laws Ann. Sec. 24-16-1 to 24-16-5 (1960) |
| **Tennessee** | Tenn. Code Ann. Sec. 40-28-401 (1982) |
| **Texas** | Tex. Code Crim. Pro. Ann. Art. 42.11 (Vernon 1979) |
| **Utah** | Utah Code Ann. Sec. 77-27-24 to 77-27-25 (1982) |
| **Vermont** | Vt. Stat. Ann. Tit. 28, Sec. 1301 (1970) |
| **Virgin Islands** | V.I. Code Ann. Tit. 5, Sec. 4631 to 4633 (1967) |
| **Virginia** | Va. Code Sec. 53.1-166 to 53.1-167 (1982) |
| **Washington** | Wash. Rev. Code Sec. 9.95.270 (1983) |
| **West Virginia** | W.Va. Code Sec. 28-6-1 to 28-6-2 (1980) |
| **Wisconsin** | Wisc. Stat. Ann. Sec. 304.13 (1993) |
| **Wyoming** | Wyo. Stat. Sec. 7-13-416 (1977) |
| **U.S.** | 4 U.S.C. Sec. 112 (1983 or 4 U.S.C.A. Sec. 112 (West 1985)(preferred) |

## Interstate Compact Parole/Probation Transfer Process



7/98

The Parole and Probation Compact Administrators' Association is indebted to the following committee members for their work in revising this publication:

**1985 Committee**

Lynn A. Thorkildson, Chairperson
Illinois

Charles Cornwell
Nebraska

Patricia A. Parker
Missouri

**1995 Committee**

Sherry Pilkington, Chairperson
North Carolina

Robert M. Porter
Florida

Ray Taylor
Iowa

Timothy L. Carroll
District of Columbia

M. C. Miller
Arizona

**1998 Committee**

Karen P. Tucker, Chairperson
Florida

Dan Moroney
Arizona

Donald LaFratta
Massachusetts

Copyright 1986
Revised 1998
$15.00

---

[i] 48 Stat. 909; 4 U.S.C. Sec. 111. The provision was renumbered Sept. 6, 1966 and is at 4 U.S.C. Sec. 112 (1985) as provided by 80 Stat. 608.

# LEGAL CITATIONS

[ii] The Council of State Governments, ed. *The Interstate Placement of Children: A Preliminary Report.* Lexington, Kentucky: The Council of State Governments, 1978, p.24.

[iii] Texas v. New Mexico, 462 U.S. 554, 77 L Ed 2d 1, 103 S. Ct. 2558 (1983).

[iv] Zimmerman, p. 27.

[v] *U.S. Steel Corp. v Multistate Tax Comm'n.* 434 U.S. 452, 98 S. Ct. 799, 54 L Ed 2d 682 (1979); *Virginia v. Tennessee, supra.*

[vi] 48 Stat. 909; 4 U.S.C. Sec. 111. The provision was renumbered Sept. 6, 1966 and is at 4 U.S.C. Sec. 112 (1985) as provided by 80 Stat. 608.

[vii] Uniform Enabling Act. *See* Appendix A.

[viii] The Uniform Enabling Act, (see Appendix A) *United States ex rel Simmons v. Lohman, supra; People ex rel Crawford v. Dep't of Correctional Services, New York State Parole Bd.*, 329 N.Y.S.2d 739, 38 A.D.2d 725 (1972).

[ix] *Ex parte Cantrell*, 172 Tex. Crim. 646, 362 S.W.2d 115 (1962).

[x] *In re Petition of Matthews*, 18 Ohio App.2d 155 (1969); *Commonwealth ex rel Banks v. Hendrick*, 430 Pa. 575, 243 A.2d 438 (1968). *See Buddinger v. Commissioner of Police*, 254 U.S. 128, 38 S. Ct. 41, 62 L Ed 193 (1973) and *People ex rel Mark v. Toman*, 362 Ill. 232, 199 N.E. 124 (1935).

[xi] *State v. Hill*, 334 N.W.2d 746 (Iowa 1983); *Ex parte Cantrell*, 172 Tex. Crim. 646, 362 S.W.2d 115 (1962). State ex rel Ohio Adult Authority, 82 Ohio App. 3d 52 (1993).

[xii] *Lilly v. Platt, supra; People ex rel Rankin v. Ruthazer, supra; State ex rel Eikenbary v. Smith* 54 Ohio Law Abs. 253, 87 N.E.2d 590; *State ex rel Nagy v. Alvis*, 152 Ohio St. 515, 90 N.E.2d 582; *State v. Waters*, 268 Ala. 454, 108 So.2d 146; *United States ex rel Simmons v. Lohman, supra.*

[xiii] *Padilla v. State*, 64 S.W.2d 797 (1983); *State ex rel Reddin v. Meeka*, 298 N.W.2d 192 (1980).

[xiv] Parole and Probation Form III (Agreement to Return).

[xv] *Ex parte Tenner, supra; Cook v. Kern*, 330 F.2d 1003; *Madden v. Simmons, supra; People ex rel Rankin v. Ruthazer*, 98 N.Y.S.2d 104, *aff'd.* 304 N.Y. 302, 107 N.E.2d 458; *Pierce v. Smith, supra; State ex rel Morris v. Tahash*, 115 N.W.2d 676; *Stens v. Ashe*, 86 F. Supp. 317; *United States ex rel Simmons v. Lohman, supra; Woods v. State, supra.* This proposition has also been the subject of favorable opinions by the Attorneys General of Iowa (1939), Kentucky (1949), Maryland (1946), North Carolina (1959), Oregon (1943), Texas (1961), and Vermont (1951).

[xvi] *Commonwealth v. Kaminsky*, 206 Pa. Super. 480; *In re Casemento*, 49 A.2d 437; *People ex rel Marro v. Ruthhazer*, 140 N.Y.S.2d 571; *Rider v. McLeod*, 323 P.2d 741. The following Attorneys General have ruled favorably on "Third State return" via the Compact: California (December 1961), Idaho (1956), Missouri (October 16, 1963), South Dakota (November 1963), Texas (January 1961), Wyoming (1955). A contrary result was reached by the Attorney General of Florida (1960). Third party state returns under Compact upheld by the Attorney General of Ohio (December 1, 1977) and Attorney General of Washington (February 4, 1977).

[xvii] *State of NY v. Bymul*, 138 misc. 2d 326 (1987).

[xviii] Seward v. Heinze, 262 F.2d 42 (9th Cir. 1958); *Pierson v. Grant*, 527 F.2d 161 (8th Cir. 1975); *Forester v. California Adult Authority*, 510 F.2d 58 (8th Cir. 1975); *Cook v. Kern, supra; Schwartz v. Woodahl, supra; White v. Hall, supra; In re Williams, supra; State ex rel Swyston v. Hedman, supra; State ex rel Morris v. Tahash, supra; Madden v. Simmons, supra; Pierce v. Smith, supra.*