IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ROBERT TWYMAN. JR., #147435, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CIVIL ACT. NO.  2:06cv833-MEF |
| | ) | |
| ALABAMA DEPARTMENT | ) | |
| OF CORRECTIONS, *et al.*, | ) | (WO- DO NOT PUBLISH) |
| | ) | |
| Respondents. | ) | |

**MEMORANDUM OPINION AND ORDER**

This cause is before the court on petitioner Robert Twyman's ("Twyman")'s petition for a writ habeas corpus pursuant to 28 U.S.C. § 2241.[1]  Twyman, an inmate incarcerated by the Alabama Department of Corrections, contends that he was arrested on a void fugitive warrant and that he has been held in custody in violation of the Fourth and Fourteenth Amendments.  According to Twyman, when he was returned to prison following the revocation of his parole, correctional officials improperly added five years, eight months and five days to his sentence as "dead time" because the fugitive warrant upon which he was arrested was voided by the Alabama Board of Paroles and Pardons.  The respondents filed an answer in which they contend that Twyman's habeas petition is due to be denied because his claims provide no basis for relief.  (Doc. # 14).  Twyman was provided an opportunity

---

[1]  This cause of action is before the court on a petition for writ of habeas corpus filed by the petitioner, an inmate in the custody of the Alabama Department of Corrections.  Although Twyman filed this action on a form for use in filing a habeas application under 28 U.S.C. § 2254, it is clear from the allegations contained therein that this case is more appropriately filed under the provisions of 28 U.S.C. § 2241.

to file a response to the answer of respondents and has done so.  Counsel was also appointed to represent the petitioner.  Upon review of the pleadings filed in this case and the law of this Circuit, the court concludes that no evidentiary hearing is required and that Twyman's § 2241 petition is due to be denied.  *See generally* Rule 8, *Rules Governing Section 2254 Cases in United States District Courts*.

## BACKGROUND

The pertinent facts are undisputed.  Twyman was released on parole by the State of Alabama on May 27, 1996.  His supervision was subsequently transferred from Talladega County, Alabama to Cobb County, Georgia.  On November 10, 1997 Twyman was declared delinquent by the Alabama Board of Pardons and Paroles.  (Doc. # 45, Att. # 2).  On January 27, 1998 the Board ordered the delinquency be voided.  (*Id.*, Att. #4).  On March 26, 1998, Twyman was arrested in Cobb County, Georgia and charged with Aggravated Assault and Disorderly Conduct.

On June 8, 1998, the Alabama Board of Pardons and Paroles again declared Twyman delinquent and authorized the Alabama Department of Corrections to issue a warrant for his arrest.  (Doc. # 39).  The Commissioner of the Alabama Department of Corrections issued the fugitive warrant on June 9, 1998. (*Id.*)

On September 15, 1998, Twyman pled guilty to misdemeanor reckless conduct charges in Cobb County, Georgia.

Twyman was arrested in Talladega County, Alabama on February 13, 2004.  Relying

on the fugitive warrant issued on June 8, 1998, the Alabama Department of Corrections requested a detainer be placed on Twyman on February 25, 2004.  (Doc. # 39 at 10). Twyman's parole was subsequently revoked.  Because the fugitive warrant was outstanding from June 8, 1998 until Twyman was arrested on February 13, 2004, that time is considered "dead time," by the State of Alabama, and Twyman gets no credit for that time towards his sentence.  Consequently, because the State includes five  years, eight months and five days of dead time to Twyman's incarceration, his anticipated release date is now September 4, 2015.

## DISCUSSION

Initially, Twyman did not challenge the revocation of his parole in 2004. Rather, he asserted that the defendants violated his constitutional rights before and during the parole revocation process related to his March 2004 parole hearing, and that the Board has used "dead time" to improperly prolong his incarceration until 2015.  Specifically, Twyman complains that:

**1.**    Board's action of declaring him delinquent and denying him credit for time from June 8, 1998 until February 13, 2004, constitutes arbitrary and capricious action violative of the Fourteenth Amendment, and he should get credit for five (5) years, eight (8) months, and five (5) days he served while on parole.

**2.**    The fugitive warrant upon which he was held was not issued by a neutral and detached magistrate, and thus, the warrant was constitutionally infirm.

3

**3.**     He was denied due process at the revocation proceeding because he was

denied the opportunity to confront and cross-examine witnesses at the hearing.

**1. The "Dead Time" Claim**.  Twyman argues that the declaration of delinquency

upon which the June 1998 fugitive warrant was based was withdrawn on January 27, 1998.

Consequently, the fugitive warrant should have been declared void.  In essence, Twyman's

claim boils down to his contention that members of the Alabama Board of Pardons and

Paroles are relying on false and inaccurate information to deny him credit for time between

June 8, 1998 and February 13, 2004.

The Constitution proscribes only the use of admittedly false information.  See *Monroe*

*v. Thigpen*, 932 F.2d 1437 (11th Cir. 1991).  The plaintiff relies on an assertion made by the

Alabama Department of Corrections in an earlier case filed in this district to argue that the

Board admitted that the fugitive warrant was not, but should have been, voided to support

his claim that the Board is relying on erroneous information to prolong his incarceration.

"For some reason, unknown to the Board [of Pardons and Paroles], the fugitive warrant

issued by the Department of Corrections was not voided."  (*Twyman v. Campbell*, CV

2:04cv341-MEF (M.D. Ala. 2004) (Doc. # 16).  Twyman's reliance is misplaced.  On

November 10, 1997, Twyman was declared delinquent by the Board.  (Doc. # 45, Att. # 2).

On January 27, 1998, the Board "ordered that the delinquency be voided, the warrant for

[Twyman's] arrest be withdrawn, and that he be CONTINUED UNDER parole supervision."

(*Id.*, Att. # 4; *see also* Doc. # 91, Ex. 1).  It is clear from the evidence that the November 10, 1997, declaration of delinquency was voided by the Board on January 27, 1998.  (Doc. # 91, Ex. 1).

However, Twyman was subsequently arrested in Cobb County, Georgia, on March 26, 1998, and charged with Felony Aggravated Assault and Misdemeanor Disorderly Conduct.  (Doc. # 87, Ex. 3).  Twyman was declared delinquent on June 5, 1998 based on his March 26, 1998 arrest in Georgia.  The fugitive warrant issued by the State of Alabama was a direct result of Twyman's arrest in Georgia.  The fugitive warrant was not issued based on the November 1997 arrest.  Consequently, while it is true that the Board voided the first delinquency declaration, the voiding of the first declaration of delinquency has no effect on the second declaration of delinquency issued in June 1998.

In *Monroe v. Thigpen*, 932 F.2d 1437 (11th Cir. 1991), the court considered a pro se inmate's complaint alleging that he was deprived of due process because erroneous information in his prison file was used to deny him fair consideration for parole and minimum custody status.  Monroe alleged that presentence report information indicating he had raped the victim of his crime was false.  The defendants admitted the presentence information was false.  Acknowledging that he had no liberty interest in parole, Monroe claimed a due process right to be fairly considered for parole.  He contended that the defendants' reliance on admittedly false information in order to deny him parole or minimum security classification violated due process.

5

The *Monroe* court held that the defendants' reliance on *admittedly* false information to deny Monroe consideration for parole was arbitrary and capricious treatment violative of the Constitution. However, the *Monroe* court was careful to distinguish its holding from its prior decision in *Slocum v. Ga. State Bd. of Pardons and Paroles*, 678 F.2d 940 (11th Cir. 1982).

> Our holding today does not conflict with our earlier holding in *Slocum*, supra. In *Slocum*, the plaintiff, who had been denied parole, made the conclusory allegation that the Board must have relied upon erroneous information because otherwise the Board would surely have granted him parole. *Slocum*, 678 F.2d at 941. The plaintiff then sought to assert a due process right to examine his prison file for the alleged errors. Unlike the instant case, in *Slocum* the state did not admit that it had relied upon false information in denying parole nor did the plaintiff present any evidence that his prison file even contained any false information. We held in *Slocum* that prisoners do not state a due process claim by merely asserting that erroneous information may have been used during their parole consideration. *Id.* at 942. We also determined that prisoners do not have a due process right to examine their prison files as part of a general fishing expedition in search of false information that could possibly exist in their files. *Id.* In the case at bar, we are confronted with prison authorities who admit that information contained in Monroe's files is false and that they relied upon such information, at least in part, to deny Monroe parole and to classify him as a sex offender. As we stated, the parole statute does not authorize state officials to rely on knowingly false information in their determinations. *Thomas [v. Sellers]*, 691 F.2d [487] at 489 [(11th Cir. 1982)].

*Slocum* controls the disposition of the instant case. The defendants do not admit that the 1998 delinquency declaration was voided and thus, false, and they deny any knowing reliance on false information. While *Monroe*, *supra*, establishes a constitutional claim for the knowing use of false information by parole officials, the instant case is controlled by *Slocum*, *supra*. In *Slocum*, the Court held that prisoners do not state a due process claim by

merely asserting that erroneous information exists in their prison files.  Moreover, "prisoners cannot make a conclusory allegation regarding the use of [false] information as the basis of a due process claim."  *Jones v. Ray*, 279 F.3d 944, 946 (11th Cir. 2001)(While use of false information in a parole file can be a due process violation, prisoners cannot make a conclusory allegation regarding the use of such information as the basis of a due process claim).  Twyman points to no other false information relied on by the Board, and his mere assertion that the Board relied on false information does nothing more than raise the possibility that the information provided by the Board is false.  Twyman has failed to produce any evidence that the defendants relied on information which they knew to be false.  Twyman's contention that the 1998 delinquency declaration was voided, without any evidence that it had been voided, is simply insufficient.  Since it is undisputed that the defendants did not rely on *admittedly* false information, the plaintiff is entitled to no relief as a matter of law and summary judgment is due to be granted in favor of the defendants on this claim.

2.    **The Warrant Claim**.  Twyman also contends that his Fourth Amendment rights were violated when he was seized on a fugitive warrant that was not issued by a neutral and detached magistrate, and was not supported by reasonable cause.  First, Twyman is simply factually incorrect when he argues that the declaration of delinquency upon which the fugitive warrant was based was voided by the Board of Pardons and Paroles.  The declaration of delinquency issued by the Board after Twyman's arrest in Georgia was never voided or

withdrawn.  Consequently, that declaration of delinquency constitutes reasonable cause to support the fugitive warrant issued pursuant to Ala. Code. § 15-22-31.

The law is clear that although a parolee is entitled to the protection of procedural due process at a parole revocation hearing, *see Overton v. Bazzetta,* 539 U.S. 126, 138 (2003), "the full panoply of rights due a defendant in [a criminal prosecution] does not apply to parole revocations." *Morrissey,* 408 U.S. at  480.  A parolee stands in a fundamentally different position from a person newly arrested or charged with a crime.  State law authorizes the Department of Corrections to issue a warrant for a paroled prisoner if there is "reasonable cause to believe that such prisoner has lapsed, or is probably about to lapse, into criminal ways or company or has violated the conditions of his parole in an important respect, ...." Ala. Code § 15-22-31(a).  At the time the fugitive warrant issued, Twyman had been arrested in Georgia and charged with Aggravated Assault and Disorderly Conduct.  The fact that Twyman had not yet been convicted or pled guilty to the charges is immaterial.  The charges form the basis of the declaration of delinquency, and parole may revoked based a parolee's commission of a new offense, even where the parolee is not convicted of the offense, if sufficient evidence is presented at the revocation hearing to establish that the parolee committed acts constituting the new offense. *Morrisey*, 408 U.S. at 484.  Sufficient evidence was presented at the revocation hearing that Twyman was charged with these new offenses, and subsequently pled guilty to criminal trespass and reckless conduct.  *See* Doc. # 87. Accordingly, summary judgment is due to be granted in favor of defendants on this claim.

**3. The Due Process Claim**.  Finally, Twyman argues that the defendants deprived him of due process with respect to his parole revocation hearing held in 2004 because two witnesses from Georgia were not called to testify on his behalf.  His claim arising from an alleged lack of due process in the parole revocation process entitles him to no relief.

It is well settled that parole revocation evokes a liberty interest and certain due process protections are required.  *Ellard v. Alabama Board of Pardons and Paroles*, 824 F.2d 937 (11th Cir. 1987).  Although a parolee is entitled to the protection of procedural due process at a parole revocation hearing, *see Overton v. Bazzetta,* 539 U.S. 126, 138 (2003), "the full panoply of rights due a defendant in [a criminal prosecution] does not apply to parole revocations."  *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972).  In *Morrissey*, the Court sets out the requirements for a constitutionally sound parole revocation hearing.

> [D]ue process is flexible and calls for such procedural protections as the particular situation demands.  "[C]onsideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as the private interest that has been affected by governmental action.
>
> [Due process requires] that some minimal inquiry be conducted at or reasonably near the place of the alleged parole violation or arrest and as promptly as convenient after arrest while information is fresh and sources are available.  Such an inquiry should be seen as in the nature of a "preliminary hearing" to determine whether there is probable cause or reasonable ground to believe that the arrested parolee has committed acts that would constitute a violation of parole conditions.
>
> There must also be an opportunity for a hearing... prior to the final decision on revocation by the parole authority.... The revocation hearing must be tendered within a reasonable time after the parolee is taken into custody.

*Morrissey v. Brewer*, 408 U.S. 471, 481-488 (1972).

The revocation of parole may be based upon reasonable grounds, unlike criminal proceedings which require a standard of proof "beyond a reasonable doubt." *See Id.*, at 490. Twyman maintains that he was denied due process at the revocation proceedings because neither his probation officer from Georgia nor the victim were required to appear and testify on his behalf. He does not specify how the testimony of these witnesses would have assisted his defense. It is undisputed that Twyman pled guilty to misdemeanor charges in Georgia. A certified copy of Twyman's conviction in Cobb County, Georgia was presented at the parole revocation hearing. Twyman testified at the parole hearing that the victim did not appear in court in Georgia, and that he and his parole officer in Georgia agreed that the charges in Georgia would not violate his parole in Alabama. It is undisputed that Twyman's parole was revoked not only because of the charges in Georgia but because he moved without permission. Thus, the petitioner fails to show how the hearing officer's refusal to require the testimony, which was cumulative to the submitted evidence, deprived him of due process, or was prejudicial to him. The record of the parole revocation hearing provides an ample basis for the Board's decision to revoke the petitioner's parole. Accordingly, summary judgment is due to be granted in favor of the defendants on this claim.

**CONCLUSION**

For the foregoing reasons, it is

ORDERED and that this petition for habeas corpus relief is hereby DENIED and that

the petition hereby DISMISSED with prejudice.

DONE this the 30th day of September, 2010.


_____/s/ Mark E. Fuller_____
CHIEF UNITED STATES DISTRICT JUDGE

11